<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AARON HAMMARY,<br><br>*Defendant.* | Crim. No.: 18-712 (KSH)<br><br><u>**OPINION**</u> |

**I.   Background**

Aaron Hammary pled guilty to two separate Hobbs Act robberies and discharging and brandishing a firearm during and in relation to the robberies in violation of 18 U.S.C. §§ 1951(a) and 942(c)(1)(A)(ii). (D.E. 20.) He was sentenced in May 2019 to 120 months' imprisonment followed by 5 years of supervised release. (D.E. 24.) According to the Bureau of Prisons' website, he is currently incarcerated at Oklahoma City FTC and is expected to be released in June 2026. *See* Federal Bureau of Prisons, *Find an inmate*, https://www.bop.gov/inmateloc/ (last visited Aug. 17, 2022).[1]

Hammary has moved (D.E. 27, 29) pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), for a reduction in sentence on compassionate release grounds based on altered family circumstances and general COVID-19 concerns.[2] The government has opposed (D.E. 32).

---

[1] As will become clear *infra*, at the time Hammary filed the instant application he was incarcerated at FCI Allenwood.

[2] Hammary filed a *pro se* submission (D.E. 27) which was supplemented by counsel (D.E. 29).

## II. Legal Standard

A court may modify a term of imprisonment once it has been imposed only "in limited circumstances." *In re Morris*, 345 F. App'x 796, 797 (3d Cir. 2009). Relevant here is 18 U.S.C. § 3582(c)(1)(A), which provides in pertinent part:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . .

The United States Sentencing Commission's policy statement allows a court to reduce a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A) where: (i) extraordinary and compelling reasons warrant a reduction in sentence; (ii) the defendant is not a danger to the safety of others or the community under 18 U.S.C. § 3142(g); and (iii) consideration of the sentencing factors in 18 U.S.C. § 3553(a) would support the relief sought. *See* U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018). Congress directed the Sentencing Commission to define the statutory term "extraordinary and compelling reasons," *see* 28 U.S.C. § 994(t), and the commentary to the policy statement provides that the defendant's medical condition, family circumstances, or age may under certain circumstances serve as "extraordinary and compelling reasons" for compassionate release. U.S.S.G. § 1B1.13 n.1(A)-(C). This policy statement serves as "useful guidance" to the Court and is not meant to constrain its "independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under

§ 3582(c)(1)(A)." *United States v. Alexander*, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020) (Wolfson, J.) (internal citations and quotations omitted).

## III. Discussion

### A. Administrative Exhaustion

Before the Court may apply the above legal standard to Hammary's motion, it must be satisfied that he has exhausted his administrative remedies. A prisoner may file a motion for compassionate release with the sentencing court "after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (explaining exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A)). The government does not dispute that the exhaustion requirement is met here: Hammary sought compassionate release from the warden of FCI Allenwood on or about October 29, 2021 and the request was denied on or about November 5, 2021. (*See* D.E. 27-1 at 4, 5.) Since more than 30 days have passed since the warden received Hammary's request, the Court may address the instant motion on its merits.

### B. Substantive Standards for Compassionate Release

#### 1. Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to define the meaning of the statutory term "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t). As indicated above, the application notes to the Sentencing Commission's relevant policy statement provide that extraordinary circumstances exist in specified circumstances involving the defendant's medical condition, age, or family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)-(C). Here,

3

Hammary primarily argues that he has demonstrated the existence of "extraordinary and compelling reasons" based on his family circumstances. (*See* D.E. 27 at 2-3.) The Sentencing Commission limited family circumstances justifying compassionate relief to two specific situations: "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children"; or "(ii) [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Application Note 1(C), U.S.S.G. § 1B1.13.

In his submission, Hammary represents that the mother of his child is suffering from various severe health issues caused by a hit-and-run accident she suffered in 2021. (D.E. 27 at 2.) He argues that her injuries and phobias resulting from the accident leave her unable to care for their son, who was about six years old at the time of this application. (*Id.* at 2-3.) For this to qualify as an extraordinary family circumstance, not only would the mother have to be incapacitated, but she would have to be the only available caregiver for that minor child; this burden has not been met.

As evidenced by the briefings and letters received from others on Hammary's behalf, his child has the support and care of Hammary's brother, sister, and mother. (*See* D.E. 37-1.) Further, the exact nature and extent of the boy's mother's injuries are not supported by any submitted medical records or other proof of the severity of her conditions. Additionally, in Hammary's own words, she is "apprehensi[ve] with fully participating with [his] motion" because she deems herself a sufficient caregiver. (D.E. 27-1 at 2; *see* D.E. 36-1 (letter from son's mother indicating that she is "dedicated to [her] child" and has "work[ed] tirelessly as a single mother," but that Hammary "would be able to help [her] in child rearing" if released).) In short, the Court is constrained to point out that Hammary has presented an argument that is

shaky at best, particularly so when the child in question was about one year old when Hammary was arrested (*see* PSR ¶ 88), and his mother is not behind the extraordinary changes in his primary care that Hammary appears to propose. This record clearly does not reflect family circumstances extraordinary and compelling enough that they warrant Hammary's release, a burden that is hard to carry. *See United States v. Mason*, 2021 WL 2530781, at *3 (D.N.J. June 21, 2021) (Martini, J.) (no extraordinary and compelling circumstances in a case presenting a more seriously afflicted mother, where defendant did not adequately substantiate health conditions or provide details about the circumstances of the son he sought to care for in her stead).

Hammary also indicates that he is the substitute father for the young twin daughters of his current girlfriend, and that both they and his son will grow up without a present paternal figure. (*See* D.E. 27 at 3; *see also* D.E. 27-1 at 6.) But courts regularly recognize this as the natural consequence of prolonged incarceration. *See United States v. Cromwell*, 2021 WL 3561244, at *3 (D.N.J. Aug. 12, 2021) (Hayden, J) ("The impact on family members is an inherent feature of any term of incarceration."); *see also United States v. Doolittle*, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) (Chesler, J.) ("The Court recognizes that the family members of incarcerated individuals often struggle to cope without their relative's daily presence and aid, but Defendant's application does not meet the criteria for compassionate release under the law.").

Hammary has submitted several letters detailing his family circumstances and the familial support of his release. (*See* D.E. 35, 36-1, 37-1, 38.) Hammary's attestations and those of his family and friends as to the growth and improvement of his character while in prison are nonetheless not relevant to the legal analysis required by the statutory requirements for compassionate release. Further in this vein, Hammary has articulated his belief in the suitability

of a lower sentence for his crimes, which is not a relevant issue.  Finally, he gives an impassioned description of the general conditions within the prison system throughout the COVID-19 pandemic.[3]  (*See, e.g.*, D.E. 27 at 4-5; D.E. 35.)  Yet, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Thomas*, 841 F. App'x 364, 366 (3d Cir. 2021) (quoting *United States v. Raia*, 967 F.3d 594, 597 (3d Cir. 2020)).  However strongly argued in Hammary's submissions, these points do not satisfy his burden under the First Step Act.

### 2.  Section 3553(a) Factors

Under § 3582(c)(1)(A), the Court must also consider the sentencing factors in 18 U.S.C. § 3553(a) to the extent applicable, *see United States v. Pawlowski*, 967 F.3d 327 (3d Cir. 2020), and whether the defendant would be a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g).  Insofar as Hammary has failed to present an extraordinary and compelling basis for the relief he seeks, the Court need not address these factors.  But the crimes he admitted to are such that even had he satisfied that burden, relief by way of a reduced sentence is inappropriate.

Section 3553(a) directs the Court to impose a sentence that is sufficient, but not greater than necessary, to further the purposes of sentencing, *i.e.*, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(D).  Additionally, the Court takes into account, *inter alia*, the nature and circumstances of the offense and the

---

[3] Hammary indicates no medical conditions that have been physically exacerbated by COVID-19, but he does suffer from PTSD, OCD, and depression.  (*See* D.E. 27 at 3.)

defendant's history and characteristics.  *Id.* § 3553(a)(1).  Evaluating dangerousness under 18 U.S.C. § 3142(g) also involves, in relevant part, assessing the nature and circumstances of the offense, the defendant's history, and the "nature and seriousness of the danger to any person or the community" that would be posed by his release.  *United States v. Mann*, 2021 WL 1851902, at *6 (D.N.J. May 7, 2021) (Salas, J.).

Hammary's crimes of conviction are very violent.  He participated in two armed robberies in less than two weeks, and in the course of one of the robberies he shot a victim in the head, who underwent at least five surgeries. According to the presentence report prepared in connection with his sentencing, that victim was left blind and paralyzed on the left side of his body.  (PSR ¶ 36.)  Also, Hammary has various firearm convictions in his criminal history.  (*Id.* ¶¶ 40, 71, 74.)

Additionally, and duly noting that his sentence reflected the cooperation Hammary gave to law enforcement, this record does not evidence that Hammary has expressed genuine remorse for his actions or acknowledges the harm he inflicted on his victims.  While Hammary appears to have made some efforts at rehabilitation, completing numerous courses during his incarceration,[4] he expresses regret only in the most general terms:  "I always have and will express remorse and regret for my crimes and for any lives I have altered physically, mentally, or emotionally.  I will never stop seeking forgiveness for my misdeeds[.]"  (D.E. 27-1 at 1.)  The victims of the robberies were barbershop patrons and a liquor store cashier, strangers in the wrong place at the wrong time.  (*See* PSR ¶¶ 16, 19.)  Hammary's statement describing his violent acts against them as "misdeeds" sorely misses the point, minimizing as it does the lifelong effects upon these

---

[4] Hammary provided certificates to the Court indicating that he has completed several training programs while incarcerated, such as sports marketing, industrial truck training, and various skills courses.  (*See* D.E. 27-1 at 9-21.)

7

individuals.  Finally, his history while incarcerated undermines a finding of rehabilitation; Hammary lost 41 days of good time for being in possession of a hazardous tool.  (*See* D.E. 32-1.) Under the facts in this record the need for protection of the public weighs very heavily against early release, and Hammary has only served about half of his 120-month sentence, diluting the factor of adequate punishment for his offenses.

    For the above reasons, Hammary's motion for compassionate release is denied.  An appropriate order will issue.

Date:  August 17, 2022                          /s/ Katharine S. Hayden
                                                         Katharine S. Hayden, U.S.D.J.